1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA RAMIREZ,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No.  1:14-cv-00775-SAB<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 15, 16, 17) |

**I.**

**INTRODUCTION**

Plaintiff Vanessa Ramirez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from Valley Fever; chest pains; bilateral hearing loss; right arm burns; diabetes mellitus; obesity; a mood disorder; bipolar disorder; depressive disorder; anxiety; and borderline personality disorder.  For the reasons set forth below, Plaintiff's Social Security appeal

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 8.)

shall be granted in part and denied in part.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title XVI application for supplemental security income on January 3, 2011.  (AR 75.)  Plaintiff's application was initially denied on April 19, 2011, and denied upon reconsideration on August 8, 2011.  (AR 87-90, 92-97.)  Plaintiff requested and received a hearing before Administrative Law Judge Tamia N. Gordon ("the ALJ").  Plaintiff appeared for a hearing on October 12, 2012.  (AR 41-67.)  On October 19, 2012, the ALJ found that Plaintiff was not disabled.  (AR 20-36.)  The Appeals Council denied Plaintiff's request for review on July 8, 2013.  (AR 13-15.)

### A.     Relevant Hearing Testimony

Plaintiff appeared at the hearing and waived representation.  (AR 43-44.)  Plaintiff was born on December 10, 1984, and was twenty-seven years old on the date of the hearing.  (AR 48.)  Plaintiff attended one year of college and completed nurse assistant training.  (AR 50.) Plaintiff was going to go to work in a home for the elderly when she was in a car accident and was unable to due to her limitations with lifting and carrying.  (AR 51.)  Plaintiff has worked as a tutor, and sorting tomatoes and peppers.  (AR 51.)  Plaintiff was able to lift 15 pounds when she worked as sorter and 25 pounds when she worked as a tutor.  (AR 52.)  Plaintiff last worked in 2009 or 2010.  (AR 52.)

On August 30, 2010, a doctor told Plaintiff that she was disabled due to her right arm.  (AR 48.)  Plaintiff's arm was injured in a car accident in February of 2006 and she has had two to three surgeries performed on her arm.  (AR 49.)  Plaintiff testified that her arm pain and range of motion have gotten worse.  (AR 50.)  Plaintiff has scar tissue from her burns.  (AR 53-54.)

Plaintiff has difficulty opening cans of any kind, changing her son's diaper and carrying him.  (AR 54.)  Plaintiff's son weighs twenty-seven pounds and she carries him with her left hand.  (AR 54.)  To lift her son she scoops and grabs him with her left hand and tries to scoop him with her right.  (AR 54-55.)  Plaintiff is on medication for the pain which is helping, but does not help in extreme hot or cold weather.  (AR 55.)  Plaintiff takes her medication when she

has severe pain so that she cannot move her arm. (AR 55.) Plaintiff has nerve pain from underneath her shoulder down to the waist. (AR 56.) Plaintiff does not receive physical therapy. (AR 55.)

### B.    ALJ Findings

The ALJ found that Plaintiff has not engaged in substantial gainful activity since the date of her application. (AR 25.) Plaintiff suffers from the following severe impairments: right arm burns; diabetes mellitus; obesity; a mood disorder; bipolar disorder; depressive disorder; anxiety; and borderline personality disorder. (AR 25.) Plaintiff does not have an impairment or combination of impairments that meet or equal the severity of a listed impairment. (AR 26.)

The ALJ found that Plaintiff has the residual functional capacity to perform medium work except that she can occasionally reach overhead with her dominant right upper extremity. Plaintiff also needs to avoid concentrated exposure to extreme cold and extreme heat and is limited to simple routine and repetitive tasks. (AR 27.)

Plaintiff has no past relevant work experience. (AR 35.) She was a younger individual on the date the application was filed. (AR 35.) Plaintiff has at least a high school education and is able to communicate in English. (AR 35.) There are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 35.) Plaintiff has not been under a disability since the date her application was filed. (AR 36.)

### C.    Relevant Medical Evidence

Plaintiff had a consultative examination by Dr. Rios on March 23, 2011. (AR 269-272.) Plaintiff complained of diabetes and pain in her right arm. (AR 269.) Plaintiff had a car accident in February 2006 after which she was hospitalized due to an infection that developed to the right axilla to the right arm and she underwent skin grafting. (AR 269.) Plaintiff states there is still some residual pain to the right arm and she is unable to raise the arm above shoulder level due to discomfort at the skin graft site.[2] (AR 269.) As a result she has difficulty carrying with her right arm. (AR 269.)

---

[2] Throughout Dr. Rios report he refers to Plaintiff's left arm, rather than the right.

Examination of the arm revealed extensive scar tissue which was tender to touch and with pain on end range of motion of the shoulder joint. (AR 271.) Dr. Rios found Plaintiff's overall muscle bulk of the bicep to be adequate and strong with no wasting of the supraspinatus muscles observed and grip strength to the right was adequate. (AR 271.) Finger and thumb joints had flexion extension of 70 degrees to the proximal phalanx and 90 degrees to the distal phalanx bilaterally. (AR 271.) Plaintiff's motor strength was preserved at 5/5 throughout with normal muscle tone and bulk. (AR 271.) Light touch and pin prick were intact throughout the upper extremities. (AR 272.) Deep tendon reflexes were 2+ in the upper extremities. (AR 272.) Dr. Rios found Plaintiff was able to lift and carry 50 pound occasionally and 25 pounds frequently and could only perform occasional reaching, handling, fingering, or feeling limited on account of the residual pain from the skin graft on her right arm. (AR 272.)

On April 12, 2011, a physical residual functional capacity assessment was completed by Dr. Nasrabadi. (AR 273-277.) Plaintiff was found to be able to occasionally lift and carry 50 pound and frequently 25 pounds, and pushing and pulling was unlimited. (AR 274.) Plaintiff was limited in her ability to reach in all directions, handling, fingering, and feeling in her right arm. (AR 275.) Dr. Nasrabadi agreed with the limitations set by Dr. Rios. (AR 278-79.)

On June 9, 2011, Dr. Reddy prepared a case analysis and affirmed the limitations in the April 12, 2011 report. (AR 345.)

On November 22, 2011, a nurse from Coalinga Valley Health Clinic completed a statement opining that Plaintiff was unable to work. (AR 454.) The report states that Plaintiff has a painful right arm and decreased grasp and strength. (AR 455.) Plaintiff can never carry ten pound and has limited range of motion in her right arm and hand. (AR 456.)

On January 10, 2012, Plaintiff was seen for a consult on the burn to her left arm.[3] (AR 409.)

On February 3, 2012, Plaintiff was seen for pain in her right arm with limited range of

---

[3] The record states the burn is to her left arm. The record notes it is the left arm both by the individual who initially spoke with Plaintiff and by the doctor who examined her. (AR 409.)

motion. (AR 406.) Plaintiff complained that the pain was aggravated by extremes in the weather or repetitive movements. (AR 406.) Plaintiff was found to have decreased range of motion in her right shoulder. (AR 406.)

On July 6, 2012, Plaintiff was seen for chest pain and complained of numbness in her right arm. (AR 389.) On August 9, 2012, Plaintiff was seen for headaches and pain to her right wrist; and an x-ray of her wrist was ordered.[4] (AR 388.)

### III.

### LEGAL STANDARD

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

---

[4] There is no evidence in the record that an x-ray of Plaintiff's wrist was ever performed.

# IV.

# DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by rejecting Dr. Rios findings that she was limited to occasional reaching, handling, fingering and feeling on the dominant upper right extremity. (Opening Brief in Support of Plaintiff's Complaint 10-15, ECF No. 15.)  Defendant argues that the ALJ properly discounted Dr. Rios findings as they were unsupported by examination findings and the ALJ properly relied on Plaintiff's sister's statements that revealed no hand limitations. (Defendant's Responsive Brief 5-8, ECF No. 16.)

### A. The ALJ's Finding that Plaintiff Was Only Limited to Occasional Overhead Reaching is Not Supported by Substantial Evidence in the Record

Since Plaintiff is only challenging the finding that she is not limited in reaching, handling, fingering, and feeling in her dominant upper right extremity, only evidence relevant to this disability will be discussed herein.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted).  The ALJ gave limited weight to the opinion of the nurse who completed the form on November 22, 2011 because she was not an acceptable medical source; and there was little or no evidence to find that she had special knowledge, information or relationship with Plaintiff.  (AR No. 30.)  The nurse opined that Plaintiff had limitations in her right arm movement, but did not define what those limitations were.  (AR 30.) The ALJ also found that no treating physician has opined that Plaintiff has any work related physical limitations.  (AR No. 30.)  Plaintiff does not challenge these finding.

Plaintiff alleges that the ALJ erred because he did not properly evaluate Dr. Rios opinion. An ALJ must provide "clear and convincing" reasons supported by substantial evidence in the record to reject the uncontradicted opinion of an examining physician.  Lester, 81 F.3d at 830-31.

1   The ALJ gave moderate weight to the opinion of Dr. Rios because his opinion was inconsistent
2   with the record.  (AR 32.)
3           The ALJ pointed to the inconsistency in the record that Dr. Rios diagnosed Plaintiff with
4   a left arm injury although Plaintiff reported that the injury was to her right arm.  (AR 32.)  The
5   ALJ found that once again the record seems unclear on whether Plaintiff's injury was to her right
6   or left arm.  (AR 32.)  The ALJ noted that Plaintiff presented in January 2012 reporting left arm
7   pain and a "pulling sensation" and "burn" three times per week that were aggravated by extremes
8   in the weather and repetitive motion.  (AR 30.)
9           Plaintiff was seen on January 10, 2012 by Dr. Cook.  The medical record for this visit
10  shows that Plaintiff's chief complaint was a burn to her left arm.  The subjective complaint
11  shows a "burn [left] arm SP MUC (in) 2006."  Dr. Cook diagnosed Plaintiff with a burn to her
12  left arm with pain.  (AR 409.)
13          Plaintiff was seen again on February 3, 2012 by Dr. Joshi.  The record indicates that she
14  was seen for right arm pain with limited range of motion.  Dr. Joshi noted Plaintiff's subjective
15  complaints were a pulling sensation and burn three times per week that radiates down the
16  forearm to the fingers.  Aggravating factors are weather extremes and repetitive movements.  He
17  found decreased range of motion in Plaintiff's right shoulder.  (AR 406.)
18          Dr. Rios' report reflects that Plaintiff complained of pain in her right arm and that she
19  developed an infection on her right axilla to the right arm following a car accident.  (AR 269.)
20  The report states that as a result there is still some residual pain in the left arm and as a result she
21  has difficulty carrying with the right arm.  (AR 269.)  Dr. Rios noted Plaintiff's past medical
22  history as "[s]tatus post skin grafting following extensive cellulitis of the left arm."  (AR 270.)
23  His examination shows her movement is limited in the right shoulder: forward flexion of 0-150
24  degrees left and 110 degrees right; abduction 0-150 degrees left and 110 degrees right.  (AR
25  271.)
26          Dr. Rios states that

27      Examination of the left axilla and left arm revealed extensive scar formation from
        a previous infection and skin grafting.  It is tender to touch and with pain on end
28      range of motion on the shoulder joint.  The overall muscle bulk of the bicep,

>however, is adequate and strong, no wasting of the supraspinatus muscles observed. Grip strength on the right is adequate.

(AR 271.) Dr. Rios diagnosed Plaintiff with status post skin grafting of the left arm. (AR 272.) He opined that she had no manipulative limitations on the left, but "on the right she can only perform occasional reaching, handling, finger, or feeling limited on account of the residual pain from the skin graft on her right arm. (AR 272.)

The ALJ found that Dr. Rio's opinion that Plaintiff could perform medium work was consistent with the record. (AR 32.) Dr. Rios found that Plaintiff had full range of motion in all her joints except her right shoulder, and had normal muscle bulk and tone. (AR 32.) However, the ALJ found Dr. Rios limitations regarding handling, fingering, and feeling to be inconsistent with his examination where he did not note any sensory deficits in her right hand. (AR 32.)

Dr. Rios examination of Plaintiff shows that her left and right hands had the same flexion and extension of the proximal phalanx and distal phalanx. (AR 271.) Plaintiff's wrist joints were also found to have the same extension and flexion bilaterally. (AR 271.) While Dr. Rios did find limitations and tenderness in the right shoulder, Plaintiff's overall muscle bulk in her bicep was adequate and strong with no wasting of the supraspinatus muscles observed. Plaintiff's grip strength on the right was adequate. (AR 271.) Dr. Rios noted that Plaintiff's motor strength was preserved at 5/5 throughout with normal muscle tone and bulk; and light touch and pinprick were intact throughout her upper extremities. (AR 271-72.) Plaintiff's deep tendon reflexes were 2+ bilaterally in the upper and lower extremities. (AR 272.) Despite these normal findings, Dr. Rios opined that Plaintiff was limited in handling, fingering, and feeling. The ALJ found no limitation in handling, fingering, or feeling due to the paucity of evidence supporting any such limitations.

There is substantial evidence in the record to support the ALJ's conclusion. There is no medical evidence that Plaintiff has been evaluated for any medical condition in her hand. She was referred for an x-ray for wrist pain on August 9, 2012, but the record is devoid of any x-ray results. While the medical record does show some references to pain and limited range of motion in Plaintiff's shoulder due to the burn to Plaintiff's right arm, there is no objective

medical evidence to support the hand limitations imposed by Dr. Rios.

The ALJ considered the third party adult function report completed by Plaintiff's sister finding it was sufficiently detailed and that she was in a position to observe and comment on Plaintiff's activities due to the amount of time they spent together. (AR 33-34.) On June 22, 2011, Plaintiff's sister completed the third party function report. (AR 189-196.) She stated that when Plaintiff wakes up she takes care of her own personal grooming, feeds her daughter, tries to tidy up or goes out to run errands. (AR 189.) Plaintiff takes care of her daughter, bathing her, feeding her and getting her dressed. (AR 190.) It takes Plaintiff longer to dress and bathe and she is unable to straighten or curl her hair. (AR 190.) Plaintiff prepares meals that vary from soup and sandwiches to a complete meal depending upon her mood. (AR 191.) She hardly cooks complete meals anymore, now she purchases more precooked meals. (AR 191.) Plaintiff is able to do anything around the house except carry or reach certain things. (AR 191.) She does not clean her mirrors or windows because she is self-conscious. (AR 191.) Plaintiff's sister did not indicate that Plaintiff had any problems using her hands. (AR 194.) Her sister stated that Plaintiff is unable to lift heavy items. (AR 194.)

Plaintiff's sister's report is substantial evidence to support the finding that Plaintiff did not have any handling, fingering, or feeling limitations. She did state that it took Plaintiff longer to do things and that she hardly cooked anymore, however that was due to Plaintiff's lack of motivation. Plaintiff's sister identified reaching and lifting limitations, but no difficulties in handling, fingering, or feeling.

Finally, the ALJ also considered Plaintiff's activities of daily living. (AR 34.) Plaintiff complained that she has pain when she uses a manual can opener; a knife to cut vegetables, meats and chicken; lifts frozen foods to cut; and moves the skillet saucepan. (AR 174, 199.) Plaintiff does not have enough strength to move sofas, stove, or refrigerator; and could not bathe her daughter who was born three months after the accident. (AR 174.) She is unable to carry groceries. (AR 175.) At times she is unable to pick up a skillet because of trembling and cannot use a can opener without pain. (AR 175.) Since Plaintiff is right handed she cannot write as well or carry more than fifteen pounds. (AR 185.)

Plaintiff does her personal grooming, bathes and feeds her daughter. When she feels comfortable she cleans her house a bit, dresses nicely, and puts her hair up. (AR 197.) She feeds her daughter three meals a day, grooms her, and changes her clothing. (AR 198.) On occasion she eats with her left hand or skips meals. (AR 198.) Plaintiff cooks daily and makes complete meals when she is in the mood. (AR 199.) Plaintiff is able to do laundry and light household chores. (AR 199.)

When Plaintiff carries her baby she feels throbbing pain. (AR 213.) Using her right arm for long periods of time "hurts badly", with the cold weather she is in constant pain and has very limited mobility and cannot even put her hair in a ponytail without crying. (AR 214.)

The third party function report of Plaintiff's sister and Plaintiff's statements regarding her activities of daily living support the ALJ's finding that Plaintiff does not have limitations in handling, fingering, or feeling with her right hand. The ALJ has provided clear and convincing reasons to reject the handling, fingering, and feeling limitations that have substantial support in the record.

However, the ALJ also found that Plaintiff was limited to only occasional reaching overhead. (AR 35.) The ALJ stated that Plaintiff's activities included putting her hair up and this was inconsistent with her purported reaching limitations. The ALJ concluded that since Plaintiff is capable of putting her hair up she can occasionally reach overhead. (AR 35.) However, the ALJ has not provided clear and convincing reasons to reject the limitation that Plaintiff is limited to occasional reaching in all directions.

In examination of Plaintiff's shoulder joints, Dr. Rios found decreased flexion of 110 degrees and abduction of 110 degrees on the right.[5] (AR 271.) Plaintiff contends that she has limited mobility of her shoulder. The record shows that Plaintiff is unable to reach some of her body parts when bathing and is unable to use a hair straightener or curling iron due to her limited mobility. (AR 198.) Plaintiff does not shave because she is unable to reach. (AR 190, 198.) It

---

[5] Plaintiff argues that Dr. Rios found "severely reduced abduction of 40 degrees on the right, (ECF No. 15 at 12); however as the Court views the record, extension was 0-40 degrees bilaterally, and abduction was 0-150 degrees left and 0-110 degrees right. (AR 271.)

is difficult for Plaintiff to reach certain things and she needs help with hard to reach places. (AR 194, 199.) Plaintiff cannot store articles that require her to reach over her head without assistance. (AR 174.) Using her right arm for long periods of time "hurts badly", with the cold weather she is in constant pain and has very limited mobility and cannot even put her hair in a ponytail without crying. (AR 214.)

Dr. Rios findings and Plaintiff and her sister's testimony regarding her limitation are consistent with Dr. Rios opinion that Plaintiff is limited to only occasional reaching. Further, the agency physicians also found that Plaintiff's reaching ability was limited in all directions. (AR 275, 278-79). The ALJ's finding that Plaintiff was only limited to occasional **overhead** reaching is not supported by substantial evidence in the record. Since the record demonstrates that Plaintiff's reaching ability is more limited than included in the residual functional capacity assessment, the ALJ erred by limiting Plaintiff's reaching to only occasional overhead reaching.

This action is therefore remanded for the Commissioner to determine if substantial jobs exist in the national economy that Plaintiff can perform due to her limitation of occasional reaching in all directions.

**B.    Plaintiff Has Identified no Ambiguity or Inadequacy in the Record to Require the ALJ to Have Been Required to Further Develop the Record**

Plaintiff contends that due to her mental disability and the fact that she was unrepresented, the ALJ had a duty to further develop the record. (ECF No. 15 at 13-15.) Defendant contends that the inconsistencies in the medical opinions are not a sufficient basis to require the ALJ to seek further development of the record. (ECF No. 16 at 7-8.)

The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). The ALJ must be especially diligent when the claimant is unrepresented. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011). "[W]here the claimant is not represented, it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and

circumstances are elicited." Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992) (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)). Further, the ALJ's duty to fully develop the record is heightened where the claimant may be mentally disabled and, therefore, unable to protect her own interests. Higbee, 975 F.2d at 562.

Plaintiff appears to argue that if the ALJ disagreed with the findings of Dr. Rios he should have sought clarification from Plaintiff's treating physician, re-contacted Dr. Rios, or had a medical expert testify at the hearing. (ECF No. 15 at 14.) However, the ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). A specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. McLeod, 640 F.3d at 885. While the ALJ noted the discrepancy that certain doctors indicated Plaintiff's burn was to her left shoulder, the ALJ determined that Plaintiff was limited in her right extremity which is consistent with the preponderance of the medical evidence.

The ALJ did not find the evidence to be ambiguous or inadequate to allow for proper evaluation of the evidence, nor does the Court find that the record itself establishes any ambiguity or inadequacy. The ALJ found that the evidence did not support Dr. Rios opinion. The ALJ's finding that Dr. Rios opinion was not supported in the record is not similar to other instances in which the ALJ was found to have a duty to further develop the record. See Tonapetyan, 242 F.3d at 1150-51 (ALJ erred by relying on testimony of physician who indicated more information was needed to make diagnosis); McLeod, 640 F.3d at 887 (ALJ erred by failing to obtain disability determination from the Veteran's Administration); Bonner v. Astrue, 725 F.Supp.2d 898, 901-902 (C.D.Cal. 2010) (ALJ erred where failed to determine if claimants benefits were property terminated or should have been resumed after his release from prison); Hilliard v. Barnhart, 442 F.Supp.2d 813, 818-19 (N.D.Cal. 2006) (ALJ erred by failing to develop record where he relied on the opinion of a physician who recognized he did not have sufficient information to make a diagnosis).

The Court finds that Plaintiff has not shown that the ALJ erred by failing to further develop the record.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in determining that Plaintiff did not have any limitations in handling, fingering, or feeling.  However, the ALJ did err by failing to find that Plaintiff was limited to only occasional reaching in all directions.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED IN PART AND DENIED IN PART;

2. This action is remanded back to the Commissioner for further administrative proceedings consistent with this opinion; and

3. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **March 6, 2015**

UNITED STATES MAGISTRATE JUDGE